UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA D. GRAY

      Plaintiff,

vs.
                                   Case No. 2:18-cv-12146
                                   HON. MARK A. GOLDSMITH

CITY OF DETROIT,

      Defendant.
_____/

**OPINION & ORDER**
**GRANTING IN PART, DENYING IN PART, AND DEFERRING RULING IN PART ON DEFENDANT'S MOTION IN LIMINE (Dkt. 63)**

This matter is presently before the Court on Defendant the City of Detroit's motion in limine (Dkt. 63). Plaintiff Sheila Gray, proceeding pro se, filed a response (Dkt. 65). For the reasons that follow, the City's motion is granted in part and denied in part.[1]

### I.    BACKGROUND

Because the factual and procedural background of this case has been fully set forth in prior docket entries, see 2/18/20 Op. (Dkt. 48); Am. R&R (Dkt. 41), it need not be restated in full here. In relevant part, Gray is a retired Detroit police officer who suffered a knee injury in 2006 while on duty. Due to this knee injury, she went on restricted duty status in 2011 and was reassigned to the Records and Identification Unit. Gray understood that her restricted duty placement at the Unit was a temporary accommodation. Although she made annual requests to remain in her position at the Unit permanently, her requests were never granted. However, two other employees, Charles Barnes and Carole Furstenau, secured permanent placement at the Unit.

---

[1] Because oral argument will not assist in the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

1

In October 2015, Gray filed an internal complaint against a co-worker, Andre Sigmon, regarding an incident that occurred between the two in the workplace. After Gray reported the incident to her supervisor, Sergeant Carlos Dennis, he recommended that Sigmon be given a written reprimand. Sigmon was in fact reprimanded for failing to "use command of temper" and "to show courtesy" to a co-worker.

In the summer of 2016, Gray took leave under the Family and Medical Leave Act (FMLA). In August, Gray's doctor issued restrictions indicating that she could perform light work, but that she could not walk for prolonged distances and could not stand for prolonged periods. When Gray returned to work in August, Dennis moved her workstation to the back of the office, which, according to Gray, caused her to walk and stand for longer durations than her doctor had recommended. When Gray mentioned her work restrictions, Dennis said "he was ordering her to work in that office." According to Gray, other employees began to treat her in a hostile manner and tried to sabotage her work.

In September 2016, Gray applied for retirement due in part to the increased strain on her knee at work. A few weeks later, a doctor found that Gray was permanently incapacitated and unable to perform 12 of the 24 "essential functions" of a City of Detroit police officer. The City found Gray's knee condition to be a disability and granted Gray's retirement application. Gray retired in November 2016.

On September 27, 2017, Gray filed a formal complaint with the Equal Employment Opportunity Commission (EEOC), alleging disability, race, and sex discrimination. On April 9, 2018, the EEOC determined that it could not substantiate a violation of law and issued a right to sue notice, advising Gray that she could file a lawsuit against the City.

In July 2018, Gray filed the instant lawsuit. She brought claims against the City for violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.2101 et. seq., alleging that the City discriminated against and harassed her on the basis of her disability, failed to accommodate her disability, and retaliated against her for filing complaints about that treatment. Gray also brought claims for violations of Title VII, 42 U.S.C. § 2000e, et seq., and Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 et seq., alleging that the City discriminated against Gray on the basis of her race and sex, and retaliated against her for filing complaints about that discrimination. The City moved for summary judgment on each of these claims (Dkt. 26). The Court granted the City's motion as to all but one claim—Gray's failure to accommodate claim brought under the ADA. 2/18/20 Op. at 7.

## II. LEGAL STANDARD

A motion in limine allows the Court to rule on the admissibility of evidence prior to trial, which expedites the proceedings and gives the parties advance notice of evidence that they cannot rely upon during trial. Bennett v. Bd. of Educ. of Washington Cnty. Joint Vocational Sch. Dist., C2-08-cv-663, 2011 WL 4753414, at *1 (S.D. Ohio Oct. 7, 2011) (citing Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997)). The movant must demonstrate that the evidence is clearly inadmissible in order to prevail on a motion in limine. Id. If the movant cannot meet this burden, the Court can defer evidentiary rulings so that questions of foundation, relevancy, and potential prejudice may be resolved in the context of trial. See Ind. Ins. Co. v. Gen. Elec. Co., 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). The determination of whether to grant a motion in limine is within the sound discretion of a trial court. United States v. Seago, 930 F.2d 482, 494 (6th Cir. 1991). The Court retains the ability to reconsider the admissibility of evidence

and even change its ruling on a motion in limine, "as the proceedings give context to the pretrial objections." Bennett, 2011 WL 4753414, at *1.

### III. ANALYSIS

The City structures its motion in limine around three categories of evidence. First, the City broadly seeks to exclude any and all evidence that is relevant to Gray's dismissed claims. Next, the City specifically objects to portions of Gray's Exhibits 1 and 3–9 due to irrelevance, hearsay, prejudice/confusion, and lack of authentication. Finally, the City contends that the testimony of Emeline King and Kristal Scott—Gray's former co-workers from the Unit—as well as that of Willie Bradley, who is employed by the Medical Section of the Detroit Police Department, and Sherry McCain, an officer who worked for the 3rd precinct, must be excluded for lack of personal knowledge. For ease of reference, the Court's opinion will address the City's objections in the three categories used in the City's motion.

**A. Evidence Relevant to Dismissed Claims**

Federal Rule of Evidence 401 sets forth the standard for relevancy. "[E]vidence is relevant if a) it has any tendency to make a fact more or less probable than it would be without the evidence; and b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[T]he relevance threshold is very low under Rule 401." United States v. Whittington, 455 F.3d 736, 739 (6th Cir. 2006). Irrelevant evidence—i.e., evidence that does not satisfy the two-part relevancy test—is inadmissible. Fed. R. Evid. 402. Even if evidence is relevant, the Court may nevertheless exclude it if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

4

The relevancy inquiry is framed by the issues of the specific case. Here, Gray's sole remaining claim is her failure to accommodate claim. To succeed on this claim, Gray must prove that: (i) she is disabled under the ADA; (ii) she is otherwise qualified for the position, with or without a reasonable accommodation; (iii) the City knew or had reason to know of her disability; (iv) Gray requested a reasonable accommodation; and (v) the City failed to provide the reasonable accommodation. See Johnson v. Cleveland City Sch. Dist., 443 F. App'x 974, 982–983 (6th Cir. 2011).

The City argues that "any and all" evidence and testimony relating to Gray's dismissed claims should be excluded as irrelevant. This request is overly broad and does not permit the Court to make an exclusion determination of specific testimony or exhibits. The request is overly broad because the fact that certain evidence may be relevant to Gray's dismissed claims does not necessarily mean that evidence is entirely irrelevant to Gray's remaining claim. The City must point the Court to specific evidence so that the Court can determine whether that evidence has any relevance to Gray's failure to accommodate claim. Thus, to the extent that the City asks the Court to issue an order blanketly forbidding any evidence relating to Gray's dismissed claims, the Court declines to do so. See Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co., No. 17-cv-01595, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (holding that courts "may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded") (punctuation modified).[2]

---

[2] The City also states that "it is anticipated that [Gray] will seek to introduce evidence of constructive discharge or that she was forced to resign." Mot. at 20. The City argues that "Plaintiff has not plead constructive discharge and has presented no evidence during discovery that she was constructively discharged" and, therefore, should not be permitted to admitted evidence of such. Id. The City can take comfort in the fact that "[m]any courts sanction parties who attempt to introduce evidence (exhibits or oral testimony) not disclosed pursuant to a pretrial order, by refusing to admit such evidence in its entirety." Columbia Gas Transmission Corp. v. Zeigler, 83

However, the City also points to several specific examples of evidence falling into the general category of evidence relevant to Gray's dismissed claims. The Court will consider the relevance of each of these examples.

### i. Narrative Regarding Sigmon

Gray's Exhibit 1 contains a variety of different documents, as discussed in further detail below. One of these documents is a narrative describing the work incident between Gray and Sigmon. Pl. Ex. 1 at PageID.2022 (Dkt. 63-2). As the City argues, the narrative appears to only be relevant to Gray's harassment or hostile work environment claims that are no longer before this Court. Gray provides no counter explanation as to how this narrative is relevant to her failure to accommodate claim. Accordingly, the narrative describing the work incident between Gray and Sigmon is excluded as irrelevant under Rule 402.

### ii. August 26, 2016 Note

Gray's Exhibit 1 also contains a handwritten note dated August 26, 2016 stating that Gray wished to file a harassment complaint against Dennis. Id. at PageID.2024. Gray's desire to bring a harassment claim against Dennis is not relevant to her failure to accommodate claim. Thus, this handwritten note is excluded as irrelevant under Rule 402.

### iii. Scott's and King's Declarations

Gray's Exhibit 2 (Dkt. 63-3) includes two declarations by Scott, Pl. Ex. 2 at PageID.2029–2032, 2038–2041, and one by King, id. at PageID.2033–2037. In Scott's first declaration, she states that she "observed a lot of unfairness" in the Unit, noting that she saw that Gray had been waiting for permanent placement in the Unit since 2011 but two other employees, Barnes and

---

F. App'x 26, 31 (6th Cir. 2003). Accordingly, Gray will be limited to introducing the evidence that she has set forth in the proposed joint final pretrial order (JFPO)—she cannot seek to introduce additional evidence of constructive discharge.

Furstenau, secured permanent positions in the Unit after requesting permanent placement in 2015. Id. at PageID.2030. Scott further states that she was "made aware" by the Medical Section that other officers were permitted to leave work to attend medical appointments and work overtime. Id. at PageID.2031. In Scott's second declaration, she reiterates that Barnes and Furstenau were able to secure permanent positions in the Unit even though several other officers, including Gray, had already requested permanent positions. Id. at PageID.2039. In her declaration, King states that Sigmon would make "negative facial expression" towards Gray. Id. at PageID.2034. She next states that Dennis moved Gray "so far away where she would have to walk so far knowing she had a job restriction." Id. King also states that Dennis restricted Gray from working overtime. Id. Finally, King states that her supervisor, Aloha Dobbs, once told King to "stay away" from Gray because Gray was a "bad influence." Id. at PageID.2035.

As the City suggests, Scott's and King's statements regarding the City's alleged disparate treatment of Gray and other employees, such as Barnes and Furstenau, are only relevant to discrimination claims that are no longer before this Court. Further, King's statements regarding Sigmon's and Dobb's reactions towards Gray likewise are only relevant to harassment or hostile work environment claims that have been dismissed.

Even if some portion of these declarations were relevant, they would nevertheless be inadmissible hearsay, as discussed in further detail below. Consequently, the City's motion is granted as to its request to exclude Scott's and King's declarations.

### iv. Emails and Shift Assignment Sheet

Gray's Exhibit 5 (Dkt. 63-5) includes a series of emails, a list of names of Detroit Police Department personnel, and a shift assignment sheet for certain Unit employees (not including Gray) for July 2016–June 2017. Some of these emails are between Gray and a technician; in these

emails, Gray requests a password. Other emails are between Gray and a supervisor, Sergeant Braxton Hall. In these emails, Gray complains that other employees were rude to her, neglected work duties while on duty, and were permitted to work overtime. Id. at PageID.2082. Gray also states in one email that when she returned from medical leave, Dennis placed her in the back room and told Gray to call the Medical Section for a new placement. Id. According to Gray, Dennis called the Medical Section for her. Id. The email chain contains an email from Dennis memorializing a meeting that he had with Gray in August 2016 about logging hours properly. Id. at PageID.2081.

The shift assignment sheet and list of names are irrelevant to Gray's failure to accommodate claim. The emails in which Gray requests a password are likewise wholly irrelevant. Further, the portions of the emails pertaining to logging hours and Gray's co-worker's behavior and alleged improper billing practices are only relevant to Gray's dismissed discrimination, harassment, and hostile work environment claims. However, the portion of the emails describing Gray and Dennis's conversation about calling the Medical Section for a reassignment are relevant to the issue of whether Gray actually requested an accommodation for her disability. See Am. R&R at 28–29.

Accordingly, the paragraph beginning with "When I came back to work after being on sick leave . . ." and ending with ". . . I think he wanted to move me," Pl. Ex. 5 at PageID.2082, will not be excluded as irrelevant. The remaining portions of Gray's Exhibit 5 are irrelevant and, therefore, cannot be admitted at trial.

### v. Texts, Emails, Audio Recording, and Video

The City argues that irrelevant evidence pertaining to mistreatment by supervisors and co-workers includes "text messages, emails, videos and audio records." Mot. at 12–13. However, in

8

the proposed JFPO, Gray does not list any text messages in her list of exhibits. Thus, there are no text messages to exclude. The relevance of the only emails listed by Gray as exhibits have already been addressed above. As discussed below, the Court defers its determination on the admissibility of the audio recording and video. The Court cannot determine the ultimate issue of admissibility until it receives copies of the recording and video.

### B. Other Evidentiary Objections to Gray's Exhibits 1, 3–9[3]

The City objects to various portions of Gray's Exhibits 1 and 3–9 on the basis of irrelevance, prejudice/confusion, hearsay, and lack of authentication. Rules 402 and 403—discussed above—respectively govern the admissibility of irrelevant and unfairly prejudicial or confusing evidence. Rule 801 defines hearsay as a statement made by a declarant outside of the present hearing that a party offers in evidence to prove the truth of the matter asserted in the statement. Pursuant to Rule 802, hearsay evidence is generally inadmissible. Rule 901 sets forth the requirement that each item of evidence must be authenticated, meaning that the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. Certain kinds of evidence are self-authenticating, meaning that they require no extrinsic evidence of authenticity in order to be admitted. See Fed. R. Evid. 902. With these standards in mind, the Court proceeds to address each of the City's objections to Gray's exhibits in turn.

#### i. Gray's Exhibit 1

Gray's Exhibit 1 (Dkt. 63-2) is a combination of the following documents: (i) Gray's personnel record, (ii) two letters of recommendations, (iii) the Detroit Police Department manual's

---

[3] Gray's Exhibits 1 and 3–9 each contain several independent exhibits. Each individual exhibit must be listed in the JFPO as its own exhibit. A single exhibit should not contain multiple individual exhibits. The Court has issued an order directing the parties to file a corrected version of the JFPO. See 7/8/21 Order (Dkt. 71).

job descriptions, (iv) Gray's work evaluation rating for November 2015–April 2016, (v) an email where defense counsel ordered Gray's disciplinary history, (vi) the narrative regarding Sigmon, (vii) the EEOC dismissal and notice of rights form, (viii) the handwritten note dated August 26, 2016 regarding Dennis's alleged harassment, (ix) an administrative message from the Detroit Police regarding a cookout, and (x) the indemnification policy from the collective bargaining agreement that covered union-member employees. The City does not object to the admissibility of Gray's personnel record. However, the City objects to the other documents contained in Exhibit 1 as irrelevant. The Court has already determined above that the narrative regarding Sigmon, id. at PageID.2022, and the handwritten note dated August 26, 2016, id. at PageID.2024, are irrelevant. Gray's objections to the other documents are addressed below.

### a. Letters of Recommendation

The content of the two letters of recommendation describe Gray's past work experiences and, therefore, indicate that the letters were written before Gray began working for the City. See id. at PageID.2011-2012. Notably, one of the letters is dated May 18, 2006. Id. at PageID.2011. It is unclear how Gray's letters of recommendation created by employers prior to her employment with the City could be relevant to her failure to accommodate claim, which arose from events that occurred in 2016. The two letters of recommendation are, consequently, excluded as irrelevant under Rule 402.

### b. The Department Manual

The City argues that the page of the Detroit Police Department manual describing the Courtroom Unit—a unit for which Gray did not work—is irrelevant to Gray's failure to accommodate claim. See Pl. Ex. 1 at PageID.2013. Had Gray put forth evidence to show that she requested to be transferred to the Courtroom Unit as an accommodation for her disability, the

description of that unit could arguably be relevant. This is because the reasonable accommodation inquiry asks whether at the time of the plaintiff's request for a transfer to another position, there were vacant positions whose essential functions plaintiff was qualified to perform, with or without reasonable accommodation. Peltier v. United States, 388 F.3d 984, 989 (6th Cir. 2004). However, Gray has not put forth any evidence that she requested to be transferred to the Courtroom Unit. Consequently, the description of that unit is irrelevant to her failure to accommodate claim.

The City concedes that the remainder of the Detroit Police Department manual describes the Records and Identification Unit, where Gray was assigned. See Pl. Ex. 1 at PageID.2014–2018. However, the City contends that the description of the Unit does not describe tasks that were specifically assigned to Gray. Mot. at 13. This argument misses the mark. The failure to accommodate inquiry asks whether Gray requested to be accommodated in a different position—i.e., a position with different tasks than the ones she was performing at the time of her request. The description of duties performed by the Unit could be relevant to Gray's claim that she sought a reasonable accommodation—i.e., a position elsewhere in the Unit. The remainder of the manual will, therefore, not be excluded on irrelevancy grounds.

### c. Gray's Work Evaluation

Gray contends that her work evaluation rating for November 2015–April 2016, Pl. Ex. 1 at PageID.2019–2020, is relevant to her failure to accommodate claim because it shows that she was qualified for her position. Resp. at 12. The Court agrees. Accordingly, the work evaluation will not be excluded as irrelevant.

### d. Email Requesting Disciplinary History

The email where defense counsel ordered Gray's disciplinary history, id. at PageID.2021, likewise is irrelevant to Gray's failure to accommodate claim and is, therefore, excluded.

### e. EEOC Form

To determine whether the EEOC form should be excluded under Rule 403, the Court weighs the probative value of the form with the danger of creating unfair prejudice or confusing the jury. The probative value of the form does not outweigh the danger of unfair prejudice or confusion. In fact, regarding the probative value of EEOC determinations, the Sixth Circuit has held that "an EEOC cause determination carries an evidentiary value of practically zero." E.E.O.C. v. Ford Motor, No. 95–3019, 1996 WL 557800, at *10 (6th Cir. Sept. 30, 1996).

As for confusion, the EEOC's statement that Gray could sue the City could potentially mislead jurors insofar as it implies that the EEOC believed that Gray had a viable claim against the City. And although Gray is the party seeking to introduce the EEOC form, it is worth noting that the EEOC's statement that it was "unable to conclude that the information obtained establishes violations of the statutes" could confuse the jury in a manner detrimental to Gray insofar as it implies that the EEOC determined that the City did not violate the ADA. See Alvarez v. Royal Atlantic Developers, Inc., No. 07-21333, 2011 WL 13173807, at *4 (S.D. Fla. May 31, 2011) (holding that a similar non-finding by the EEOC presented a risk of unfair prejudice to the plaintiff).

Accordingly, the EEOC form is excluded under Rule 403.

### f. Remaining Documents

The remaining documents in Gray's Exhibit 1—an administrative message from the Detroit Police Department regarding a cookout and the indemnification policy from the collective bargaining agreement—have no relevance to Gray's failure to accommodate form and, therefore, are inadmissible.

### ii. Gray's Exhibit 3

Gray's Exhibit 3 (Dkt. 63-3) consists of Scott's two declarations and King's one declaration—the same declarations discussed above. The City argues that this exhibit should be excluded as irrelevant and as hearsay evidence. The City is correct. There are two levels of hearsay involved. First, the declarations themselves constitute hearsay evidence, as they are out-of-court statements that were made by Scott and King and that are being offered by Gray to prove the truth of the matters asserted by the declarations. Second, statements within the declarations—such as Scott's statement about the information that she was "made aware" of by the Medical Section as well as King's statements that Dodd told King to stay away from Gray—are statements about what others said and are, therefore, also hearsay. Hearsay within hearsay is inadmissible. See Fed. R. Evid. 805. Accordingly, Gray's Exhibit 3 is excluded as inadmissible hearsay.

### iii. Gray's Exhibit 4

Gray's Exhibit 4 (Dkt. 63-4) includes the following documents: (i) medical notes dated August 1, 2016 from Gray's doctor regarding her restrictions; (ii) doctor notes regarding Gray's progression from September 6, 2009 to November 30, 2016; (iii) a letter dated July 19, 2016 approving Gray's request for FMLA leave; (iv) a statement dated June 30, 2016 from Gray's doctor regarding her medical diagnoses; (v) the Detroit Police Department manual's description of restricted duty status; (vi) a doctor's appointment notice for June 29, 2016; (vii) the Detroit Police Department manual's description of psychological services; (viii) psychiatric notes regarding Gray from a psychiatric professional, Mary Linda Murphy; (ix) a letter dated August 17, 2016 from a doctor stating that Gray's visits to the doctor's office from June 21, 2016 to August 1, 2016 were for anxiety and stress; (x) a letter dated June 21, 2019 from a doctor stating that the doctor has seen Gray since March 15, 2019 and diagnosed Gray with depression; (xi) a declaration dated June

13

21, 2019 from Murphy; (xii) a letter dated March 12, 2019 from Murphy stating that Gray's source of stress was "job related due to harassment"; (xiii) a letter dated August 12, 2016 from Murphy stating that Gray's "stress is job related due to harassment" and Gray's "anxiety is due to the situation related to supervision"; and (xiv) a FMLA form dated September 25, 2014.

In its motion, the City states that it seeks to exclude these documents under Rules 403 and 901. However, in the JFPO, which the parties submitted after the City filed its motion, the City represents that it has no objection the Detroit Police Department manual's description of restricted duty status and psychological services or the June 29, 2016 doctor's appointment notice. Accordingly, the Court confines its analysis to the City's objections to the other documents contained in Exhibit 4.

Although the City asserts that these documents are inadmissible under Rule 403, it fails to explain how the probative value of the documents is outweighed by a danger of unfair prejudice or jury confusion. As a result, the City has not carried its burden to show that exclusion under Rule 403 is appropriate.

The Court turns to the City's Rule 901 argument. The crux of the City's argument appears to be that the medical documents are not self-authenticating under Rule 902 and, therefore, would need to be authenticated through the doctors' testimony at trial. See Mot. at 16. The problem with the City's argument is that it assumes that medical documents can only be authenticated through the authoring doctor's testimony. However, Rule 901 contemplates that authentication can be accomplished through a variety of means, setting forth a non-exhaustive list of examples that satisfy the authentication requirement. For instance, a document can be authenticated by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). If Gray can authenticate the

14

medical documents by some means other than the doctors' testimony, it is unclear how the City would suffer any undue prejudice. At this time, the Court cannot say with complete certainty that Gray cannot prove the authenticity of the medical documents by any of the numerous ways that may satisfy Rule 901's authentication requirement. Accordingly, the Court will deny the City's motion as to Exhibit 4. However, the City is free to re-assert its authentication objections to the documents contained in Exhibit 4 at trial.

### iv. Gray's Exhibit 5

Gray's Exhibit 5 (Dkt. 63-5) includes the following documents: (i) the email exchange between Gray and Hall, (ii) a list of names of Detroit Police Department personnel, (iii) the emails from Gray requesting a password, and (iv) a shift assignments sheet for Unit personnel from July 2016 to June 2017. The City objects to these documents under Rules 402 and 403. For the reasons discussed above, these documents are irrelevant and excludable under Rule 402, with the exception of the paragraph of the email chain between Gray and Hall beginning with "When I came back to work after being on sick leave . . ." and ending with ". . . I think he wanted to move me." Pl. Ex. 5 at PageID.2082. This paragraph is relevant to the issue of whether Gray actually requested an accommodation for her disability.

The City suggests that the email exchange between Gray and Hall should nevertheless be excluded as prejudicial under Rule 403 because "Sgt. Hall is not listed on the witness list to be subject to cross-examination as to these documents and his role, if any, as to her claim of Failure to Accommodate [is unclear]." Mot. at 16. However, the relevant paragraph appears to have been written by Gray, who is listed on Gray's witness list. The City does not contend that permitting Gray to testify about her own requests for an accommodation are unfairly prejudicial to the City. As a result, this one paragraph in Gray's Exhibit 5 will not be excluded under Rule 403.

15

### v. Gray's Exhibit 6

Gray's Exhibit 6 (Dkt. 63-6) includes the following documents: (i) enlarged pictures of the Unit work area, including pictures of Gray's co-workers; (ii) a page from the collective bargaining agreement regarding work area policies, and (iii) a diagram of the Unit. In its motion, the City argues that each of these documents should be excluded as irrelevant. Mot. at 17. However, in the JFPO, the City indicates that it has no objection to the diagram. Accordingly, the Court addresses only the pictures and the diagram.

#### a. Pictures

The City contends that pictures of the workplace showing co-workers sleeping or otherwise not performing their tasks while on-duty are irrelevant. The Court agrees that these pictures are not relevant to Gray's failure to accommodate claim. Accordingly, the pictures portraying Gray's co-workers, Pl. Ex. 6 at PageID.2091–2097, are excluded. The remaining pictures appear to portray desk surfaces or work equipment within the Unit. See id. at PageID.2097–2099. These pictures do not have any apparent relevance to Gray's failure to accommodate claim and are, therefore, also excluded.

#### b. Diagram

The page from the collective bargaining agreement regarding work areas states that the City will provide safe and clean work premises. Id. at PageID.2100. The City contends that this page is irrelevant because this case does not involve any alleged safety violation. The Court agrees. The page is, therefore, excluded under Rule 402.

### vi. Gray's Exhibit 7

Gray's Exhibit 7 (Dkt. 63-7) contains the City's response to Gray's first and second interrogatories as well as Defendant's answer and affirmative defenses. In its motion, the City

contends that "[a]ny interrogatories [sic] responses" made by the City that are "relevant to any charges that have been dismissed" should be excluded. Mot. at 17. The City fails, however, to specify which interrogatory responses are relevant to dismissed claims. Further, as noted above, the fact that evidence may be relevant to a dismissed claim does not necessarily render it irrelevant to Gray's remaining claim. Consequently, the City has not carried its burden in proving that its interrogatory responses should be excluded under Rule 402.

The City also argues that its responses reference documents that are not presented in the JFPO and, therefore, should not be shown to the jury, to minimize jury confusion. Id. Again, the City fails to point to the specific portions of its interrogatory responses that it seeks to exclude.

Courts "may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded." Pinon Sun Condo. Ass'n, 2020 WL 1452166 at *3. Because the City has failed to specify the precise portions of Exhibit 7 that it seeks to exclude, the Court denies the City's motion as to Exhibit 7.

### vii. Gray's Exhibits 8 and 9

Gray's Exhibit 8 is a video recording of the Unit and Gray's Exhibit 9 is an audio recording between Dennis and Gray. The City argues that the video should be excluded under Rule 403 because it is likely to confuse the jury. Specifically, the City argues that video was recorded by Gray and it is not clear from the video which path within the Unit she is taking while recording, nor is it "necessarily a true depiction" of the Unit. Mot. at 18. The City likewise argues that the audio recording should be excluded as likely to confuse the jury because it the audio is of poor quality and the recording fails to capture the entire conversation. Id.

To assess the merits of the City's arguments, the Court must view the video and listen to the recording. In its motion the City states that it delivered a copy of the video and audio recording

17

to the Court along with a courtesy copy of the motion. Id. at 17 n.12, 18 n.13. This is not the proper way to file hard copies of exhibits. A party must seek leave of Court to file a CD, DVD, or flash drive containing a video or audio recording in the traditional manner. See E.D. Mich. Electronic Filing Policies and Procedures R19(c). To expedite the Court's review of the video and audio recording, the Court directs the City to send digital copies of the video and recording to the Court's case manager, Karri_Sandusky@mied.uscourts.gov, by July 13, 2021. The Court defers ruling on the City's objections to Gray's Exhibits 8 and 9 until it has had an opportunity to view the video and listen to the audio recording.

**C. Personal Knowledge**

The City seeks to exclude the testimony of King, Scott, Bradley and McCain, arguing that these witnesses lack personal knowledge of the facts underlying Gray's failure to accommodate claim. Pursuant to Rule 602, a witness cannot testify to a matter if he or she lacks "personal knowledge" of the matter. The personal knowledge requirement of Rule 602 "prevents witnesses from testifying based upon information learned in a second-hand way from other sources." Prime Finish, LLC v. ITW Deltar IPAC, Civil No. 5:08-cv-0438-GFVT, 2017 WL 2021239, at *4 (citing Stiles ex rel. D.S. v. Grainger County, Tenn., 819 F.3d 934, 842 n.2 (6th Cir. 2016)).

In the JFPO, the parties failed to set forth the specific facts about which each witness will testify. Without knowing which specific facts King, Scott, Bradley, and McCain will testify about, the Court cannot determine whether these witnesses might lack the requisite personal knowledge about the topics of their testimony. The Court has directed the parties to file a corrected JFPO setting forth the specific facts of the testimony of each witness. See 7/8/21 Order (Dkt. 71). Gray must, therefore, specify the facts about which King, Scott, Bradley, and McCain will testify. The

Court defers ruling on the City's Rule 602 objection until it has received a sufficiently detailed description of the testimony of every witness.

## IV. CONCLUSION

For the foregoing reasons, the City's motion in limine (Dkt. 63) is granted in part, denied in part, and deferred in part.

SO ORDERED.

Dated: July 9, 2021　　　　　　　　　　　　　　s/Mark A. Goldsmith
　　Detroit, Michigan　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge