UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA D. GRAY

          Plaintiff,

vs.                                    Case No. 2:18-cv-12146
                                    HON. MARK A. GOLDSMITH

CITY OF DETROIT,

          Defendant.
_____/

**OPINION & ORDER**
**REGARDING DEFERRED EVIDENTIARY ISSUES RAISED IN DEFENDANT'S**
**MOTION IN LIMINE (Dkt. 63) AND PLAINTIFF'S REQUEST TO USE PICTURE AT**
**TRIAL**

Defendant the City of Detroit filed a motion in limine (Dkt. 63). Plaintiff Sheila Gray, proceeding pro se, filed a response (Dkt. 65). The Court granted in part, denied in part, and deferred in part ruling on the motion. 7/9/2021 Op. (Dkt. 72). As relevant here, the Court deferred ruling on the City's objections to video and audio recordings because the City failed to properly file copies of these exhibits for the Court's review. Id. at 17–18. The City subsequently provided the Court with copies of the video and recordings; however, the audio quality of the video and recordings was poor and, without context, the purpose of the video and recordings was unascertainable. Thus, the Court ordered Plaintiff Sheila Gray to provide the Court with (i) a transcription of the videos and audio recordings and (ii) a written explanation describing each video and each audio recording and explaining the relevance of each. 7/16/2021 Order (Dkt. 80).

Additionally, the Court deferred ruling on the City's objections to the testimony of four of Gray's witnesses—Emeline King, Kristal Scott, Sherry McCain, and Willie Bradley—because the parties failed to set forth the specific facts about which each witness will testify. 7/9/2021 Op. at

18–19.  Accordingly, the Court ordered the parties to file a revised proposed joint final pretrial order (JFPO), and specifically ordered Gray to set forth in the JFPO the facts about which King, Scott, Bradley, and McCain would testify.  Id. at 18.

Finally, the Court granted the City's motion to exclude as irrelevant one of Gray's exhibits, which contained a number of pictures largely depicting Gray's coworkers sleeping or otherwise not performing work.  Id. at 16.  During a conference held on July 16, 2021, Gray requested permission to add to her exhibit list a picture of her prior workplace depicting a counter where she worked.  7/16/2021 Order at 4.  The Court ordered Gray to provide the Court with (i) a copy of this picture and (ii) a written explanation of its relevance.  Id.

The Court now resolves the City's outstanding objections to the video, audio recordings, and witness testimony.  The Court also considers Gray's request to use the picture at trial.

**A. Video**

In the JFPO, Gray lists the following as an exhibit: "Video Recording containing footage showing the Identification Unit-Plaintiff work area 8/3/16."  The video that Gray seeks to submit is a video recorded by Gray as she walks around the Identification Unit, where she previously worked for the City.  No words are spoken during the video.  Gray submitted a written explanation describing the video:

> This is the Identification Unit and I am showing footage of the Unit that where Plaintiff Sheila Gray worked.  This is a hallway leading to one of the 6 file rooms and you will also see were the service counter is located.  The counter has slot for files that was pulled in order to perform the background checks.  These files have to be put back in there [sic] original slot at the end of your working shift.  The service counter as you can see from this video do not have a chair you have to stand all day.  Every time you pull a file you have to walk up and down that hallway and to the other file room or Index Room, Livescans Room for ex.  These are just a few of the different room in this unit.

2

The City argues that the video should be excluded under Federal Rule of Evidence 403 because it is likely to confuse the jury. Specifically, the City argues that it is not clear from the video which path within the Identification Unit Gray is taking while recording, nor is it "necessarily a true depiction" of the Unit. Mot. at 18.

The City's concerns about potential juror confusion are easily mitigated. According to the JFPO, Gray intends to take the stand as a witness for her own case; further, the City may call Gray as an adverse witness. In addition, the City may use a diagram of the Identification Unit as an exhibit. Through direct or cross-examination of Gray and reference to the diagram, the City can easily establish the exact path that Gray took through the Identification Unit while filming the video. If Gray describes a path that is inconsistent with paths reflected on the diagram, the jury can take this into consideration when assessing the weight of the video evidence and the credibility of Gray's testimony. Accordingly, the City's objection to the video is overruled.

### B. Audio Recordings

Grays lists two audio recordings as exhibits in the JFPO: (i) "Audio Recording conversation between Plaintiff and her Supervisor City of Detroit Sgt. Carlos Dennis about overtime working hours dated 6/16/16" and (ii) "Audio Recording of conversation between Plaintiff and her Supervisor, City of Detroit Sergeant Carlos Dennis dated 6/17/16 about her secondary supervisor." The City argues that the audio recordings should be excluded as likely to confuse the jury because the audio quality is poor and the recordings fail to capture the entire conversations between Gray and Dennis. Mot. at 18.

As noted above, because the audio quality of the recordings was so poor, the Court ordered Gray to submit through the utilities function (i) a written explanation of the recordings and (ii) transcriptions of the recordings. Gray failed to do so. However, it appears that Gray may have

included the transcripts in a flash drive containing digital copies of exhibits that Gray seeks to admit at trial.  Specifically, there are two exhibits in the flash drive labeled "Exhibit 35" and "Exhibit 36," which contain transcriptions.  Confusingly, however, the exhibits listed as Exhibit 35 and Exhibit 36 in the JFPO are "Dr. Melvin C. Murphy Medical Treatment Letter dated 8/17/16 - Work Related Anxiety Reaction/Stress" and "Identification Dept. Service Counter - Plaintiff work area, dated 8/2/16."

The Court will assume that Exhibits 35 and 36 contained in the flash drive are the transcripts that Gray was supposed to submit via the utilities function.  The first transcript indicates that it is an "excerpt" from "June 16, 2016," and thus presumably refers to the exhibit listed in the JFPO as "Audio Recording conversation between Plaintiff and her Supervisor City of Detroit Sgt. Carlos Dennis about overtime working hours dated 6/16/16."  The transcript reflects that the following conversation occurred:

> Sergent [sic] Dennis: Now we don't – If – if – if – if you have – don't know where else that restricted duty people can work OT.
>
> Ms. Gray: Tell me – tell me, I don't know, I'm sure that officer – hum, restricted duty officer work the weekend sometime.
>
> Sergent [sic] Dennis: Where they do that?
>
> Ms. Gray: Probably at a lot of places.
>
> (Proceedings concluded).

This does not appear to be a faithful transcription of the June 16, 2016 audio recording.  Although the audio recording is poor, Dennis clearly says something after Gray says "probably at a lot of places"; however, whatever Dennis said is not reflected in the transcription.  Additionally, as the City argues, the context of this conversation is unclear.  Without full context, the probative value of the recording is unclear, and the recording could very well confuse the jury.  Based on

what is transcribed, this recording appears to be entirely irrelevant to Gray's one remaining claim—a failure to accommodate claim that is based on her alleged request to be reassigned to a different work area, not on a request to be permitted to work overtime.  Gray provides no alternative theory of relevance, as she has failed to submit a written explanation of the relevance of this recording, despite being ordered to do so.  Accordingly, the Court sustains the City's objection and holds that Gray cannot use this recording at trial.

The second transcript indicates that it is an "excerpt" from "June 17, 2016," and thus presumably refers to the exhibit listed in the JFPO as "Audio Recording of conversation between Plaintiff and her Supervisor, City of Detroit Sergeant Carlos Dennis dated 6/17/16 about her secondary supervisor."  The transcript reflects that the following conversation occurred:

> Sergeant Dennis: Then the next step is to contact Sergeant Hall.
>
> Ms. Gray: And I—and I—I addressed that part too.  Because you're not here a lot of times, and I've talked to Sergeant Hall about that.  I would call over there to him, and a couple of times I even went over there.  And he would say I'm not your sergeant, I'm not the supervisor.
>
> (Proceedings concluded).

Again, as the City argues, the context for this conversation is unclear.  Specifically, it is not clear what "the next step" refers to, nor what Gray and Hall spoke about.  It is certainly not clear that the conversation relates to Gray's disability or alleged request for an accommodation. The unclear context could very well confuse the jury.  Gray does not provide any assistance in figuring out the context of this conversation; she failed to submit the required written explanation

of this recording.  Accordingly, the Court sustains the City's objection and holds that Gray cannot use this recording at trial.[1]

### C. Witness Testimony

The City seeks to exclude the testimony of King, Scott, Bradley, and McCain, arguing that these witnesses lack personal knowledge of the facts underlying Gray's failure to accommodate claim.  A witness cannot testify to a matter if he or she lacks "personal knowledge" of the matter. Fed. R. Evid. 602.  The personal knowledge requirement of Rule 602 "prevents witnesses from testifying based upon information learned in a second-hand way from other sources."  Prime Finish, LLC v. ITW Deltar IPAC, Civil No. 5:08-cv-0438-GFVT, 2017 WL 2021239, at *4 (citing Stiles ex rel. D.S. v. Grainger Cnty., Tenn., 819 F.3d 934, 842 n.2 (6th Cir. 2016)).

In the revised JFPO, Gray has set forth the subject matter of each witness's anticipated testimony.  Each witness is addressed in turn.

### i. King

Based on Gray's description of King's testimony, it appears that King did not personally participate in or witness the conversation where Gray allegedly requested an accommodation from her direct supervisor; Gray states both that King "is expected to testify to . . . her conversation with the plaintiff after the incident . . . ."  King cannot testify regarding what Gray told King about the conversation after it occurred.  Such testimony would violate both the rule against hearsay and Rule 602.

However, King is expected to testify about other subjects that she appears to have actually observed, such as "plaintiff overall working conditions the size of the building and unit, the

---

[1] The Court observes that in addition to listing the audio recordings as exhibits in the JFPO, Gray also listed transcripts of each recording as exhibits.  Because the audio recordings are inadmissible, the transcripts are as well.

location of the counter to the front of the building where the plaintiff received her faxes for the background checks, the volume of faxes. The distance from the parking lot to plaintiff working unit and work her location, her work load, flow of traffic the plaintiff had to service daily."  King may testify as to these first-hand observations.

Thus, the Court sustains in part and overrules in part the City's Rule 602 objection to King's testimony.

### ii. Scott

Like King's anticipated testimony, Scott's anticipated testimony includes "plaintiff overall working conditions the size of the building and unit.  The distance from the parking lot to plaintiff working unit, work her location, her work load, flow, and the volume of traffic the plaintiff had to service" and "the plaintiff work performance, the steps it took to complete the background checks and clearance, the condition and the process of working the service counter."  The City argues that "Scott worked in records, not identification, which means she did not work in the same building/location as Plaintiff."  Mot. at 19.  Based on Gray's representations, Scott learned about the amount of walking and standing that Gray's assignment required from Scott's own first-hand observations, not conversations with Gray.  Thus, the City's Rule 602 objection to Scott's testimony is overruled.  However, the City is free to raise any appropriate personal knowledge objections at trial if it appears that Scott is testifying about matters that she did not personally observe.

The City also objects to Scott's testimony because Scott "is no longer an employee for the City, and given her history with the City and a failed lawsuit, her testimony would be more prejudicial than probative."  Mot. at 19.  Although framed as an issue of prejudice, this objection

really concerns Scott's alleged biases.  Bias is not a reason to exclude a witness before trial.
Rather, bias can be explored and alleviated through cross-examination of Scott at trial.

The City's objection to Scott's testimony is, therefore, overruled.

### iii.  McCain

According to Gray, McCain's anticipated testimony includes "what she observed regarding
Plaintiff job assignment, the Identification traffic coming in for service, department protocol and
procedure."  The City argues that because McCain did not work in the Identification Unit, "[a]ny
testimony she might present would be hearsay, and furthermore since the Identification Unit had
moved out of the 3rd precinct at least a year prior to the jurisdictional time frame, she would have
no personal knowledge on facts relating to Plaintiff's claim of Failure to Accommodate."  Mot. at
20.

Based on the City's representations, it seems unlikely that McCain would have personally
observed the amount of standing and walking that Gray was required to do in the Identification
Unit.  However, the Court will permit Gray an opportunity to establish the basis of McCain's
knowledge at trial.  Accordingly, the Court overrules the City's objection to McCain's testimony.
Should Gray fail to establish that McCain has any knowledge of the facts relevant to this case
outside of what Gray has told McCain about it, the City will be free to raise personal knowledge
objections to McCain's testimony.

### iv.  Bradley

Although the City identifies Bradley as a witness who lacks personal knowledge of the
events relevant to this case, the City fails to provide any analysis explaining its position.  As a
result, the City has not carried its burden in demonstrating why Bradley's testimony should be
excluded.  See Bennett v. Bd. of Educ. of Wash. Cnty. Joint Vocational Sch. Dist., C2-08-cv-663,

2011 WL 4753414, at *1 (S.D. Ohio Oct. 7, 2011) ("To prevail on a motion in limine, the moving party must show that the evidence is clearly inadmissible.").  The Court, therefore, overrules the City's objection to Bradley's testimony.

### D.  Picture

Although Gray submitted through the utilities function a written explanation of the picture that she seeks to use at trial, she failed to submit an accompanying copy of the picture.  The Court examined the exhibits contained in the flash drive that Gray sent to the Court to see if the picture was, perhaps, present within those documents.  Gray states that the picture shows "where she was order to work going against her restriction and not being accommodated the counter has slot for files that was pulled in order to perform the background checks."  According to Gray, "[t]hese files have to be put back in there [sic] original slot at the end of your working shift.  The service counter as you can see from this video do not have a chair you have to stand all day.  Every time you pull a file she had to walk up and down that hallway and to the other room or Index Room, Livescans Room for ex. to put the file back in place."  A picture matching this description appears to be identified as Exhibit 33 in the flash drive exhibits.

The lack of a chair at the service counter is at least somewhat relevant to Gray's claim that her work assignment required her to stand more than her work restrictions permitted.  Accordingly, the Court will permit Gray to introduce this picture at trial.  However, the City is free to object to the picture on grounds other than relevance at trial.

## I.    CONCLUSION

For the foregoing reasons, the Court overrules the City's objections to the video, Scott's testimony, McCain's testimony, and Bradley's testimony; sustains the City's objections to the

audio recordings; and sustains in part and overrules in part the City's objections to King's testimony.  Gray is permitted to use the picture at trial.

       SO ORDERED.

Dated: August 20, 2021                    s/Mark A. Goldsmith
      Detroit, Michigan                MARK A. GOLDSMITH
                                        United States District Judge